

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

FILED

OCT 2 1 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**CARLA MERCADO,**

**Plaintiff,**

**v.**                                                            **Civil Action No. 2:11cv145**

**LYNNHAVEN LINCOLN-MERCURY, INC.,
D/B/A SOUTHERN HOSPITALITY AUTO GROUP**

**Defendant.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 and Defendant's Partial Motion to Dismiss Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Having carefully considered the parties' pleadings, the Court finds that these matters are now ripe for judicial determination. For the reasons stated herein, Defendant's Motion for Summary Judgment and Defendant's Partial Motion to Dismiss Amended Complaint are **DENIED.**

### I. FACTUAL AND PROCEDURAL HISTORY

On March 4, 2011, Plaintiff, Carla Mercado ("Mercado"), filed a seven-count Complaint against Defendant, Lynnhaven Lincoln-Mercury, Inc. ("Lynnhaven"), doing business as Southern Hospitality Auto Group, alleging federal causes of action for Hostile Work Environment Sexual Harassment, Quid Pro Quo Discrimination, and Retaliation in the course of Employment, in

1

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and state common law claims for Intentional Infliction of Emotional Distress, Battery, Assault, Wrongful Discharge, and Wrongful Discharge in Violation of Public Policy.

Mercado alleges that Lynnhaven employed her from May 2005 to March 7, 2009 as a "Sales Consultant." Am. Compl. ¶ 4. Lynnhaven also claims to have employed Mercado on three separate occasions – 1998-1999, 2003-2006, and 2006-2009. Am. Compl. ¶ 4. Lynnhaven contends all three periods ended with Mercado's resignation. Def.'s Mem. Supp. Mot. Summ. J. ¶ 5. During Mercado's tenure, Juan Lewis ("Lewis") served as General Manager of Lynnhaven. Am. Compl. ¶ 4. Mercado further alleges that Lewis, acting within the scope of his employment, subjected her to a hostile work environment in the form of unwanted sexual comments and touching from September 2, 2008 to March 8, 2009. Am. Compl. ¶ 14. Mercado believes Lewis acted within the scope of his employment during all alleged acts. Am. Compl. ¶ 14. These acts included requests for sexual favors, sexual touching, and gratuitous talk of sexual matters. Am. Compl. ¶ 15. Mercado also argues that Lewis routinely made derogatory sexual comments to and about Mercado, as well as about other female employees in Mercado's presence. Am. Compl. ¶ 16. These comments occurred while Mercado was working under Lewis at Lynnhaven's place of business. Am. Compl. ¶ 16.

The Amended Complaint provides numerous examples of Lewis' alleged sexual commentary. Mercado claims that during a sales meeting attended by sales personnel and the general manager, Lewis asked one of the sales associates, "Are you Puerto Rican? If not, do you want some in you?" Am. Compl. ¶ 16. Similarly, Mercado attests that Lewis solicited sexual conduct on multiple occasions, including directing Mercado to "come sit on my lap," "you know

2

what you have to do," and "get down on your knees." Am. Compl. ¶ 16.  On another occasion,

Mercado claims Lewis responded to Mercado's request for a promotion by saying "You know

what you have to do . . . get under my desk." Am. Compl. ¶ 16.  In response to Mercado

informing Lewis that she sold a car, Lewis allegedly forcibly kissed her. Am. Compl. ¶ 16.

Mercado also asserts that on many occasions Lewis grabbed her buttocks in both the Kia and

Lincoln showrooms. Am. Compl. ¶ 16.  With the exception of a single incident, Mercado

contends that all advances were during work hours, in the workplace, while Mercado was acting

within the scope of her employment, and while Lewis was acting as Mercado's supervisor. Am.

Compl. ¶ 16.  Mercado claims she resisted all verbal and physical sexual advances. Am. Compl.

¶ 17.  Following these rejections, Mercado indicates that a campaign of retaliatory action

commenced, including a disproportionate amount of rejected "deals" and diverted sales. Am.

Compl. ¶ 17.  She believes that certain colleagues at the dealership shunned her. Am. Compl. ¶

17.  Lynnhaven argues that Mercado never reported any allegations of sexual harassment or

retaliation to a manager. Def.'s Mem. Supp. ¶ 26.  Rather, Lynnhaven asserts that Mercado's

only report was made to Amber Morris, whom she believed was a manager. *Id.* at 26.  Mercado

claims that Amber Morris represented herself to the public and to employees as a "delivery

manager," despite Lynnhaven's assertion that Ms. Morris was not a manager.  Lynnhaven further

contends that Mercado had no reason to believe Ms. Morris was a manager. *Id.*

Mercado declares she was terminated without notice on March 8, 2009, in retaliation for

her refusal of sexual advances and her complaints about sexual harassment. Am. Compl. ¶ 18.

Lynnhaven denies Mercado was terminated and instead claims Mercado resigned from her job by

failing to report to work on three consecutive Sundays. Def.'s Ans. Am. Compl. ¶ 18.

On September 18, 2009, Mercado filed an administrative Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination by Lynnhaven on the basis of Sexual Harassment and Retaliation. On March 31, 2011, Lynnhaven filed a Partial Motion to Dismiss Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Lynnhaven's motion was granted in part and denied in part. Lynnhaven's motion to consolidate Counts I and II of the Complaint was denied. The motion to consolidate Counts IV, V, and VI of the Complaint was granted because Mercado failed to sufficiently plead *respondeat superior* liability against Lynnhaven. Mercado was granted leave to amend her Complaint. Lynnhaven's motion to dismiss Count VII of the Complaint was denied.

On June 16, 2011 Mercado filed an Amended Complaint. That same day, Lynnhaven filed a Partial Motion to Dismiss the Amended Complaint. Subsequently, Lynnhaven filed a Motion for Summary Judgment on August 22, 2011. Mercado filed an Opposition to the Motion for Summary Judgment on September 8, 2011, in which she abandoned her claims for intentional infliction of emotional distress, battery, and assault. Pl.'s Opp'n Def.'s Mot. Summ J. 2.

## II. LEGAL STANDARD

According to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also McKinney v. Bd. of Trustees of Maryland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) ("[S]ummary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not necessary to clarify the application of the law.") (citations omitted). In deciding a motion for summary judgment, the court must view the

facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586-87 (internal quotations omitted). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III. DISCUSSION

Lynnhaven argues that it is entitled to summary judgment on all of Mercado's causes of action. Def.'s Mot. Summ. J. 1. Lynnhaven argues that Mercado has failed to offer evidence and material facts sufficient to satisfy her burden of proof regarding her claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964. *Id.* Lynnhhaven also asserts that Mercado has failed to proffer evidence and material facts sufficient to avoid summary judgment on her Virginia state law claims for wrongful discharge, discharge in violation of Virginia public policy, intentional infliction of emotional distress, assault, and battery. *Id.* Mercado has since abandoned her claims for intentional infliction of emotional distress, battery, and assault. Pl.'s Opp'n Def.'s Mot. 2. However, she has retained her wrongful discharge, wrongful discharge in violation of public policy, and all Title VII claims.

### A.   Hostile Work Environment

Count one of Mercado's First Amended Complaint alleges a cause of action for hostile

5

work environment sexual harassment. In order to establish a *prima facie* case of hostile work environment sexual harassment, the plaintiff must prove that the alleged conduct (1) was unwelcome; (2) based on plaintiff's sex; (3) was sufficiently severe or pervasive to alter the terms and conditions of employment or create an abusive work environment; and (4) that there was some basis for imputing liability to the plaintiff's employer. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-89 (1998); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010); *EEOC v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 654 (E.D. Va. 2008).

### 1.    Unwelcome

Mercado declares that Lewis' sexual advances and comments were unwelcome. Pl.'s Opp'n Def.'s Mot. 13. Mercado claims that Lewis touched, kissed, caressed, and made sexual comments to her. *Id.* Lynnhaven denies these allegations. Lynnhaven believes that Mercado's admission to a sexual relationship with another employee negates any unwelcomeness. Def.'s Mem. Supp. 19.

Whether conduct was unwelcome must be determined by the plaintiff's subjective point of view. *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 626 (E.D. Va. 2011) (citing *Harris*, 510 U.S. at 21-22); *see also Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) (stating the first element follows a subjective standard while the rest are objective). Mercado testified that Lewis' sexual comments and behavior were unwelcome. Pl.'s Mem. Opp'n Def.'s Mot. 13. Therefore, Mercado subjectively viewed Lewis' comments and behavior as unwelcome. Lynnhaven's claim that Mercado's admission to a sexual relationship with another employee negates the unwelcomeness element is unfounded. There is no precedent to support such a theory.

6

*See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 60 (1986) (concluding that despite consensual sex between a superior and employee, employee still created a genuine dispute of material fact as to whether the conduct was unwelcome). Mercado's subjective view is dispositive of the advances being unwelcome. *Edwards*, 760 F. Supp. 2d at 626. Mercado has sufficiently shown a dispute of material fact for the first element of a hostile work environment claim.

### 2.     Based on Plaintiff's Sex

The second element of a hostile work environment claim is that the alleged conduct resulted because of the employee's sex. *Faragher*, 524 U.S. at 787-89; *Spicer v. Virginia*, 66 F.3d 705, 710 (4th Cir. 1995). The critical issue is whether one sex has been exposed to disadvantageous terms or conditions of employment to which members of the opposite sex are not exposed. *Harris*, 510 U.S. at 24; *Mosby-Grant*, 630 F.3d at 334; *see also Pueschel*, 577 F.3d at 565 (concluding that plaintiff must prove that " 'but for the employee's sex [disability, or protected activity], he or she would not have been the victim of the discrimination.' ") (quoting *Jennings v. Univ. of N.C.*, 482 F.3d 686, 723 (4th Cir. 2007)).

Based on the deposition testimonies of Mercado, Sylvia Lewis, Sam Trapani, Robert Jacob, and Vincent Holley, Mercado has clearly met her burden of proof by showing a genuine dispute of material fact concerning this element. Pl.'s Mem. Opp'n 14-15. All of these individuals recounted instances of sexual harassment through sexual comments or inappropriate touching specifically and exclusively towards women. *Id.* at 13-14. Mercado has provided evidence to support a genuine dispute of material fact for the second element of a hostile work

environment claim – whether the alleged conduct was based on plaintiff's sex. [1]

### 3.   Severe and Pervasive to Alter Conditions of Employment or Create an Abusive Work Environment

In order to meet the standard of severe or pervasive, the work environment must be "permeated with discriminatory intimidation, ridicule, and insult" such that it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris*, 510 U.S. at 21; *Meritor*, 477 U.S. at 60; *Pueschel*, 577 F.3d at 565. Whether a work environment was "hostile" can only be determined by analyzing all the circumstances surrounding the workplace. *Harris*, 510 U.S. at 21; *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998) (holding that "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."). These considerations include the frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating, whether it unreasonably interferes with employee's work performance, and its effect on the employee's mental well-being. *Faragher*, 524 U.S. at 787-88; *Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d at 647. The severe or pervasive element also requires that the environment must be both subjectively and objectively offensive to be actionable under Title VII. *Harris*, 510 U.S. at 23; *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003). The victim must perceive the environment as severe or pervasive, and that perception must be reasonable. *Ziskie v. Mineta*,

---

[1]Lynnhaven does not contest the 'based on gender' element of a hostile work environment claim under Title VII.

547 F.3d 220, 228 (4th Cir. 2008) (citing *Harris*, 510 U.S. at 22.).  However, sporadic instances of abusive language or gender-related jokes and occasional ridicule are not actionable, as Title VII is not a "general civility code." *Harris*, 510 U.S. at 23; *Rizkalla v. Eng'g, Mgmt. & Integration, Inc.*, No. 1:05-957, 2006 U.S. Dist. LEXIS 96055, at *37 (E.D. Va. Aug. 29, 2006) (citation omitted).

The harassment must also be so extreme that it changes the terms and conditions of employment. *Faragher*, 524 U.S. at 788; *Spicer*, 66 F.3d at 710; *Edwards*, 760 F. Supp. 2d at 627.  In order to change the terms and conditions of employment, the harassment must affect ultimate decisions of hiring, firing, granting leave, promotion, and compensation. *Bullard v. Panasonic Corp.*, 418 F. Supp. 2d 802, 810 (E.D. Va. 2006) (citing *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999)); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). However, actions that alter the terms and conditions of employment are not limited to economic or tangible change. *Harris*, 510 U.S. at 21; *see also Edwards*, 760 F.Supp 2d at 629.  In *Harris*, the Supreme Court reasoned that the main inquiry into whether the terms and conditions of employment have changed is determining if the alleged harassment "has unreasonably interfered with the plaintiff's work performance." *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring); *Edwards*, 760 F. Supp. 2d at 629.  Similarly, an action that causes a mere annoyance or inconvenience but "does not affect a term, condition, or benefit of her employment, is not an adverse employment action." *Bullard*, 418 F. Supp. 2d at 810 (quoting *Spriggs v. Public Serv. Comm'n. of Md.*, 197 F. Supp. 2d 388, 393 (D. Md. 2002)).

The Fourth Circuit has deemed a wide-range of employer action sufficient to prove the pervasive or severe element of a hostile work environment such as sexist comments, inquiries

9

about a plaintiff's sex life, and repeated remarks belittling an employee because she was female. *See, e.g., Mosby-Grant*, 630 F.3d at 336 (gender-based language, songs, and comments); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 243 (4th Cir. 2000) (repeated remarks that belittled employee because she was a woman). Moreover, conduct may be either pervasive or severe to be actionable for a hostile work environment claim. *Whitten v. Fred's, Inc.*, 601 F.3d 231, 243 (4th Cir. 2010) (citing *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 950 (7th Cir. 2005) (stating that either pervasive or severe conduct can create a hostile work environment and that even one instance of harassment can satisfy this burden if it is egregious)). Similarly, the Fourth Circuit has distinguished propositions for sex and sexual advances from innocuous requests for dates, which do not constitute a hostile work environment. *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (citing *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 334 (7th Cir. 1993)).

The first consideration in determining whether the sexual harassment was severe or pervasive is the frequency and severity of the discriminatory conduct. *Harris*, 510 U.S. at 23; *Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d at 647. In *Okoli*, the court found a genuine dispute of material fact for the severe or pervasive element of a hostile work environment claim based on twelve incidents in four months including disparaging jokes, comments about sexual fantasies with the plaintiff, inappropriate touching, and forcible kissing. 648 F.3d at 220. However, these types of remarks cannot simply be "generalized statements that pollute the work environment" but rather must be "personal gender remarks that single out individuals for ridicule." *EEOC v. Fairbrook Med. Clinic*, 609 F.3d 320, 328–29 (4th Cir. 2010). Based on *Okoli*, Mercado has sufficiently provided a genuine dispute as to whether the conduct Lewis engaged in was sufficiently frequent and severe. Also, based on the testimony of Mercado's

10

colleagues, the Court believes there is a genuine dispute in determining whether Lewis' remarks were personalized gender remarks that singled out Mercado for ridicule. Mercado alleges she was subjected to unwanted touching, sexual comments and propositions, and a forcible kiss. Am. Compl. ¶¶ 14-16. The environment Mercado was subjected to is similar to *Okoli* in both severity and frequency. Therefore, Mercado has created a genuine dispute of material fact.

The second consideration for the severe or pervasive element is whether the harassment was physically threatening or humiliating. *Harris*, 510 U.S. at 23; *Edwards*, 760 F. Supp. 2d at 629. In *Edwards*, the court made a distinction between physically threatening or humiliating behavior and behavior that was simply offensive. *Id.* When viewing the totality of the circumstances, a reasonable person could define Lewis' behavior as physically threatening or humiliating. *See Balas v. Huntington Ingalls Indus.*, No. 2:11cv347, 2011 U.S. Dist. LEXIS 110138, at *13 (E.D. Va. Sept. 26, 2011) (reasoning that a single hug could be characterized as humiliating given the employee's attitude towards her superior). Lewis' grabbing, touching, hugging, and other inappropriate remarks and behavior could be construed reasonably as physically threatening or humiliating. Am. Compl. ¶¶ 14-16.

The Fourth Circuit has found a hostile work environment when, over six months, a supervisor massaged an employee's shoulders, stated he wanted to "make out" and "have his way" with her, falsely accused her of an affair, and asked her about her underwear, birth control, and the bodily effects of taking maternity leave. *Okoli*, 648 F.3d at 221 (citing *Beardsley v. Webb*, 30 F.3d 524, 528-529 (4th Cir. 1994)). Lastly, the Fourth Circuit has held that affidavits of other female employees can be considered as evidence of a hostile work environment. *Ziskie v. Mineta*, 547 F.3d at 224; *see also Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 184 (4th Cir. 2001)

11

(concluding that the Fourth Circuit rejects the contention that only conduct directed at the plaintiff could be used in evaluating whether the workplace environment was sufficiently hostile). Mercado claims that Mr. Lewis put his arm around her shoulder, hugged her more than ten times, told her to "get under his desk" when she asked what she had to do to be promoted, grabbed her buttocks on multiple occasions, touched her constantly, and made on-going comments about sexually explicit activity. Am. Compl. ¶¶ 14-16. Mercado has provided depositions of multiple witnesses who testified that Lewis routinely created a hostile work environment and engaged in sexually explicit behavior and inappropriate touching in their presence. Pl.'s Mem. Opp'n 14. Based on the Fourth Circuit's precedent for a hostile work environment claim, Mercado has sufficiently shown a genuine dispute of material fact for the severe or pervasive element.

Lynnhaven also argues that the alleged conduct did not alter the terms or conditions of Mercado's employment because Mercado never missed work and was able to perform her job duties. Def.'s Mem. Supp. 18-19. Additionally, during November of 2008 (when Mercado claims she was most affected by the alleged conduct), Lynnhaven asserts that her sales were among the best in the company. *Id.* Lynnhaven claims this is proof that Lewis' alleged conduct did not adversely affect the terms and conditions of Mercado's employment with Lynnhaven. *Id.* However, the Fourth Circuit has stated that "[t]he fact that a plaintiff continued to work under difficult conditions is to her credit, not the harasser's." *EEOC v. Fairbrook Med. Clinic*, 609 F.3d at 330; *see also Harris*, 510 U.S. at 22 (noting that in order to be abusive, a work environment need not seriously affect the employee's psychological well-being so long as the environment would be reasonably perceived, and is perceived, as hostile or abusive.)

Notwithstanding her sales performance in November, Mercado asserts that her sales

12

drastically declined in late 2008 and early 2009. Mercado's failure to excel in sales could be construed reasonably as evidence that the work environment was affecting her performance. Mercado offers the testimony of Sylvia Lewis who stated that she watched Mercado "dwindle to nothing." Pl.'s Mem. Opp'n 15. Viewing the evidence in the light most favorable to the non-moving party, whether the hostile work environment altered the terms and conditions of Mercado's employment is a genuine dispute of material fact. *See Mosby-Grant*, 630 F.3d at 334 (finding that plaintiff's leaving work in tears and general emotional behavior at work could be construed reasonably as evidence that the work environment negatively affects her psychological well-being).

Mercado has provided a genuine dispute of material fact for the pervasive or severe element of a hostile work environment claim. Based on *Okoli* and *Beardsley*, whether Lynnhaven subjected Mercado to a hostile work environment that was adequately severe or pervasive enough to alter the conditions of Mercado's employment is a genuine dispute of material fact. *Okoli*, 648 F.3d at 216; *Beardsley*, 30 F.3d at 524.

### 4. Basis for Imputing Liability to Lynnhaven

In order to show a basis for imputing liability to the employer, an employee must show that the harassment affected a tangible employment action. *Burlington Indus. Inc v. Ellerth*, 524 U.S. at 742; *Faragher* 524 U.S. at 765-766; *Mosby-Grant*, 630 F.3d at 337. In order to be characterized as a tangible employment action, the employment decision must be "an official act of the enterprise, a company act." *Ellerth*, 524 U.S. at 762 (finding that examples include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in

13

benefits."). Generally, this act must be that of a supervisor. *Id.* (asserting that "[t]angible employment actions fall within the special province of the supervisor.").

Mercado claims that Lynnhaven, through their General Manager Mr. Lewis, took multiple tangible employment actions against her such as denying her promotion to the finance and Internet sales departments, diverting sales (Mercado was a commission-based employee), and terminating her employment. Pl.'s Mem. Opp'n 16. Lynnhaven contends that Mercado was fired as a result of not coming to work on Sundays per company policy. Def.'s Mem. Supp. 19. However, Sylvia Lewis testified that other employees at the dealership were not disciplined for missing work on Sundays. Pl.'s Mem. Opp'n 21. Lynnhaven claims Mercado was aware of the company policy that treated missing work as a resignation. Def.'s Mem. Supp. 19. Similarly, Lynnhaven contends it had non-discriminatory reasons for refusing to promote and for failing to move Mercado to the finance department or the Internet sales department, namely a lack of a finance background and her lackluster prior performance in Internet sales. *Id.* at 16.

Lynnhaven claims that Mercado was not subjected to any tangible employment action. Mercado asserts multiple theories for a tangible employment action. There is clearly a genuine dispute of material fact under this element of Mercado's hostile work environment claim, thus Mercado has satisfied her burden of proof.

### 5. *Faragher-Ellerth* Defense

Generally, employers are vicariously liable for Title VII cases, however, when no tangible employment action occurs, the employer may raise an affirmative defense by showing: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any

14

preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

*Mosby-Grant*, 630 F.3d at 337 (citing *Faragher*, 524 U.S. at 807–808); *see also Burlington*, 524

U.S. at 765-66.  However, since there is a genuine dispute of material fact, the Court will not

address the validity of the *Faragher-Ellerth* affirmative defense at this time.

**B.      Unlawful Retaliation**

To prove unlawful retaliation, an employee must show the following:  (1) she engaged in a

protected activity; (2) she suffered an adverse employment action; and (3) the protected activity is

causally connected to the adverse employment action.  *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53, 67-68 (2006).  If Mercado establishes a *prima facie* case of retaliation, the burden

shifts to Lynnhaven to provide a legitimate, non-discriminatory basis for the adverse action.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-3 (1973); *Laughlin v. Metro. Wash.*

*Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998).  If Lynnhaven proves a non-discriminatory,

legitimate reason for the adverse action, Mercado must come forth with evidence proving this

reason was pretext for the alleged retaliation.  *Id.*

**1.      Engaged in a Protected Activity**

In order to engage in a protected activity, an employee does not need to file a formal

complaint of harassment to their employer or the EEOC.  *Bickford v. Denmark Technical Coll.*,

479 F. Supp. 2d 551, 568 (D.S.C. 2007) (holding that "[c]omplaints to supervisory or

management employees concerning harassment or discriminatory treatment as well as informal

complaints, filing of internal grievances, and complaints to an agency are included within the

definition of protected activity."); *see also Warren v. Halstead Indus., Inc.*, 802 F.2d 746 (4th Cir.

1988), *cert. denied*, 487 U.S. 1218 (1988) (citation omitted).  In *Bickford*, the plaintiff's claim for

15

retaliation was dismissed because she could not identify anyone whom she told about the discrimination. 479 F. Supp. 2d at 568. However, Plaintiff in the instant case contends she told Ms. Amber Morris about the alleged harassment. Determining whether Amber Morris held herself out as a supervisor is a question of material dispute in this case. Therefore, whether Mercado can satisfy the protected activity element of a Title VII retaliation claim is a genuine dispute of material fact.

There are two types of protected activity – opposition and participation. *Cumbie v. General Shale Brick, Inc.*, 302 F. App'x 192, 194 (4th Cir. 2008) (citing *Laughlin*, 149 F.3d at 259). Opposition activity can include informal protests as well as voicing one's own opinion to bring light to the employer's discriminatory activity. *Laughlin*, 149 F.3d at 259 (holding that "[t]o determine whether an employee has engaged in legitimate opposition activity we employ a balancing test.") (citation omitted). Participation activity requires an individual to make a charge, testify, assist, or participate in any manner in an investigation, hearing, or proceeding under Title VII. *Cumbie*, 302 F. App'x at 194 (citing *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir.1981)).

In *Laughlin* the court outlined a balancing test for determining whether opposition activity was protected. The balancing test requires the court to "balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." 149 F.3d at 301. Participation activity, unlike opposition activity, does not have a standard of reasonableness. *Cumbie*, 302 F. App'x at 194. Mercado's activities cannot be characterized as participation due to the fact that there was no ongoing investigation or hearing.

16

*See Laughlin*, 149 F.3d at 259 (determining that employee's activity could not be participation activity because there was "no ongoing 'investigation, proceeding or hearing' in which Laughlin could participate at the time").

Lastly, Lynnhaven claims to have provided an employee handbook outlining complaint procedures and methods of informing management of sexual harassment. *Id.* Def.'s Mem. Supp. 13. Lynnhaven further contends that Mercado knew that Amber Morris, the only individual whom she informed at Lynnhaven, was not a manager. *Id.* However, informal complaints can constitute opposition activity under *Laughlin.* 149 F.3d at 259. These types of informal grievances may satisfy opposition activity if they bring attention to the employer's discriminatory activities. *Id.* Mercado has thus raised a genuine dispute of material fact by notifying Amber Morris of Lewis' activity, an action which may constitute opposition activity and thus satisfy the protected activity element of a Title VII retaliation claim.

2.      **Adverse Employment Action**

The second element of a Title VII retaliation claim is an adverse employment action taken against the employee. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. Mercado claims that she was fired which, if true, would certainly satisfy this element. *Id.* Alternatively, Mercado claims that sales opportunities were diverted from her, and that she was withheld promotion or transfer as a result of her complaint of sexual harassment. Pl.'s Mem. Opp'n 21-22. Lynnhaven, however, argues that Mercado resigned as a result of failing to attend work on three consecutive Sundays. Def.'s Mem. Supp. 14. Lynnhaven states that Mercado was aware that failure to notify management of her absence would be treated as a resignation. *Id.* Alternatively, Lynnhaven denies withholding compensation, diverting sales, and denying transfer from Mercado. *Id.* at 21-

17

22. Therefore, whether Mercado was subjected to an adverse employment action is a genuine dispute of material fact. *See supra* pp. 13-14.

### 3. The Protected Activity is Causally Connected to the Adverse Employment Action

The third element of a Title VII retaliation claim is a causal connection between the protected activity and the adverse employment action. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. Generally, very little evidence of a causal connection is necessary to establish a *prima facie* case of retaliation. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (concluding "[n]ormally, very little evidence of a causal connection is required to establish a *prima facie* case"). In fact, mere closeness in time can sometimes satisfy this element. *Tinsley*, 155 F.3d at 443; *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (finding that termination within three plus months was sufficient) and *Haulbrook v. Michelin*, 252 F.3d 696, 706 (4th Cir. 2001) (stating that three weeks between complaint and termination was sufficient on its own to prove causality).

Mercado contends that she was refused transfers, promotions, and car deals. Furthermore, she argues that she was eventually terminated because of her refusals of Lewis' repeated sexual advances. Pl.'s Mem. Opp'n 22. Mercado claims that this proves a reasonable person could infer the connection between her refusals and the alleged adverse employment actions. *Id.* Because of the proximity between Mercado's termination, her refusal of Lewis' alleged advances, and the lack of promotions, transfers, and deals she received, there is a genuine dispute of material fact to the existence of a causal connection between Mercado's protected activity and the adverse

18

employment action.

## C. Quid Pro Quo Sexual Harassment

To prove a *prima facie* case of quid pro quo sexual harassment, Mercado must prove the following elements: (1) she belonged to protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the employee's reaction to the harassment affected tangible aspects of the employment relationship and the acceptance or rejection of the harassment is an express or implied reason for the tangible employment actions; and (5) the employer knew or should have known of the harassment and took no effective remedial action. *Ellerth*, 524 U.S. at 761; *Briggs v. Waters*, 484 F. Supp. 2d 466, 477-78 (E.D. Va. 2007). Lynnhaven only contests element four of this claim.

### 1. Employee's Reaction to the Harassment Affected Tangible Employment Relationship and Acceptance/Rejection of Harassment is an Express or Implied Reason for Tangible Employment Action

Lynnhaven contends that Mercado was never subjected to a "tangible employment action." Def.'s Mem. Supp. 21. In order to satisfy a tangible employment action, an employee must face a significant change in employment status such as hiring, firing, failing to promote, change in benefits, or a reassignment with significantly different responsibilities. *Ellerth*, 524 U.S. at 761.

Similarly to Mercado's retaliation and hostile work environment claims, there exists a genuine dispute as to whether Mercado suffered an adverse employment action. *See supra* pp. 13-14, 16. Mercado claims she was denied promotions, sales, and transfers. Mercado also alleges that she was ultimately terminated. Pl.'s Mem. Opp'n 21-22. Lynnhaven denies these allegations

19

and characterizes Mercado's departure as a resignation.  Def.'s Mot. 14.  Therefore, Mercado has

sufficiently shown a genuine dispute of material fact exists under this element of Quid Pro Quo

Sexual Harassment.

**D.      Wrongful Discharge in Violation of Public Policy**

Under Virginia law, when an employment contract does not state or infer a specific

duration of time, "either party is ordinarily at liberty to terminate the contract at will upon giving

reasonable notice of intention to terminate." *Bowman v. State Bank of Keysville*, 331 S.E.2d 797,

789 (Va. 1985).  However, this general rule is subject to a narrow exception where a retaliatory

charge violates established public policy.  *Id.* at 801.

Mercado alleges she was wrongfully discharged in violation of public policy under

Virginia Code § 18.2-345, lewd and lascivious cohabitation.  Va. Code. § 18.2-345 ("If any

persons, not married to each other, lewdly and lasciviously associate . . . or, whether married or

not, be guilty of open and gross lewdness and lasciviousness, each of them shall be guilty of a . . .

misdemeanor . . . .").  A plaintiff, in order to successfully claim wrongful discharge in violation of

public policy, must prove one of the following circumstances existed:

> (1) the employer violated a policy enabling the exercise of an employee's statutorily
> created right; (2) the public policy violated by the employer was explicitly expressed in a
> statute and the employee was clearly a member of that class of persons directly entitled to
> the protection enunciated by the public policy; or (3) the discharge was based on the
> employee's refusal to engage in a criminal act.

*Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 451 (E.D. Va. 2002) (quoting *Rowan v.*

*Tractor Supply Co.*, 559 S.E.2d 709 (Va. 2002)).

The Supreme Court of Virginia justified the third circumstance by explaining "[l]aws that

do not expressly state public policy, but were enacted to protect the property rights, personal freedoms, health, safety, or welfare of the public, may support a wrongful discharge claim if they further an underlying, established public policy that is violated by the discharge from employment." *Mitchem v. Counts*, 523 S.E.2d 246, 251 (Va. 2000).

### 1.    Discharge for Refusing to Commit a Criminal Act

Mercado alleges that Lynnhaven terminated her employment in violation of Virginia public policy because she refused to commit a criminal act. Am. Compl. ¶¶ 58-63. Mercado claims that she refused to engage in oral sex with Mr. Lewis inside the workplace, which she claims violates Virginia Code § 18.2-345 (prohibiting lewd and lascivious conduct).

Lynnhaven contends that Mercado's claim under Virginia Code § 18.2-345 fails because she did not argue that Lewis expressed a desire to engage in any sexual act in a public location. Def.'s Mem. Supp. 25. Lynnhaven also contends that Va. Code Ann. § 18.2-345 is unconstitutional under the rationale in *Martin*. Mem. Supp. 25.

Mercado's claim under Virginia Code § 18.2-345 can be reasonably characterized as falling under the third circumstance laid out in *Storey*. 207 F. Supp. 2d at 451 (refusal to engage in a criminal activity). The Virginia Supreme Court has found that §18.2-345 was enacted for the protection of the general public. *Mitchem*, 523 S.E.2d at 251. Therefore, the Plaintiff, as a member of the general public, is clearly a member of the class of persons directly entitled to the protection enunciated by the public policy. *Id.* Also, the Court reasoned that at-will employment will not "serve as a shield for employers who seek to force their employees, under the threat of discharge, to engage in criminal activity." *Id.* at 253. Similarly, Lewis' requests that Mercado engage in sexual favors at their place of employment are well within the conduct proscribed by the

21

statute. *See Everett v. Commonwealth*, 200 S.E.2d 564, 566 (Va. 1973) (stating this statute is aimed at conduct that is open and notorious by nature and tends to outrage the public conscience and harm the community morality).

Lastly, Lynnhaven's contention that Va. Code Ann. § 18.2-345 is unconstitutional is without merit, as the Court in *Martin* clearly stated that their holding applies only to private, consensual sexual conduct between adults. Order Resp. Def.'s Mot. Dismiss 10; *Martin*, 607 S.E.2d at 370-71 (concluding that ". . . decisions by married or unmarried persons regarding their intimate physical relationship are elements of their personal relationships that are entitled to due process protection.") (citing *Lawrence v. Texas*, 539 U.S. 558, 578 (2003)). Mercado has successfully created a genuine dispute to this claim.

### 2. Wrongful Discharge without Notice

Mercado further believes that her discharge was in violation of Virginia public policy because she did not have reasonable notice. Am. Compl. ¶ 62. Lynnhaven argues that Mercado failed to establish that she was wrongfully terminated without reasonable notice. Def.'s Mem. Supp. 16. Specifically, Lynnhaven believes that Virginia law does not require advance notice of termination in an at-will employment relationship. *Id.* Mercado claims that an employer may only terminate an at-will employee upon providing "reasonable notice," which she alleges Lynnhaven failed to satisfy. Pl.'s Mem. Opp'n 19-21. Lynnhaven contends that the "reasonable notice" provision does not relate to the timing of the termination, but rather the manner of notice. Def.'s Mem. Supp. 26.

The Virginia at-will employment doctrine states that "the employment term extends for an indefinite period and may be terminated by the employer or employee for any reason *upon*

*reasonable notice.*" *Cave Hill Corp. v. Hiers*, 570 S.E.2d 790, 793 (Va. 2002) (emphasis added)

(quoting *Cnty. of Giles v. Wines*, 546 S.E.2d 721, 723 (Va. 2001)). The Supreme Court of

Virginia has never expressly recognized a "reasonable notice" exception to the at-will

employment doctrine. *See Perry v. Am. Home Prods. Corp.*, No.3:96CV595, 1997 WL 109658,

at *8 (E.D. Va. Mar. 4, 1997) (highlighting that the Supreme Court of Virginia has never held that

the "reasonable notice" language creates a substantive right or claim or that it is an exception to

the at-will employment doctrine). The Virginia Circuit Courts have, however, acknowledged the

existence of this exception. *See, e.g., Person v. Bell Atlantic-Virginia, Inc.*, 993 F. Supp. 958, 961

(E.D. Va. 1998) (finding that some Virginia Courts have held that termination without reasonable

notice is actionable as breach of an implied contract (citing *Laudenslager v. Loral*, 39 Va. Cir.

228, 228 (Va. Cir. 1996) and *Slade v. Central Fidelity Bank, N.A.*, 12 Va. Cir. 291, 291 (Va. Cir.

1988))); *Braunfield v. Forest Home Sys.*, 12 Va. Cir. 163, 163 (Va. Cir. 1988) (concluding that the

jury was fit to determine what notice would be "reasonable" given the circumstances surrounding

a termination); *see also Wells v. G.R. Assocs., Inc.*, No. 00-CV-1408-A, 2000 WL 33199263, at

*7 (E.D. Va. Nov. 22, 2000) (holding that where the plaintiff sufficiently pled that his employer

terminated him without reasonable notice, he had successfully stated a cause of action for

termination without reasonable notice and the reasonableness question should be left to the jury).

In the alternative, Lynnhaven argues that they are entitled to summary judgment because

they did provide sufficient notice to Mercado. Def.'s Mem. Supp. 26. Lynnhaven points to

Mercado's testimony that her manager, Sam Trampani, called her on March 8, 2009, and notified

her that Lynnhaven decided to end Mercado's employment due to her unauthorized absences. *Id.*

Lynnhaven states Mercado acknowledged this by returning her dealer tags and "signing off" on

paper work with Human Resources Director Shane Wiland. *Id.*

Lynnhaven's argument is without merit under *Braunfield*, which specifically states that a determination of whether notice was "reasonable" should be left to the jury. 12 Va. Cir. at 163. Therefore, Mercado has successfully provided a genuine dispute of material fact and thus has met her burden.

## IV. DEFENDANT'S PARTIAL MOTION TO DISMISS AMENDED COMPLAINT

Lynnhaven also filed a Partial Motion to Dismiss Amended Complaint on June 16, 2011. Lynnhaven contends that Mercado's claim for retaliation fails because she testified under oath in her EEOC Charge of Discrimination that she failed to report sexual harassment to Lynnhaven and thus never engaged in a protected activity. Def.'s Partial Mot. Dismiss Am. Compl. 1. Lynnhaven also claims Mercado's wrongful termination without notice claim fails because she testified to the EEOC that she did have notice. Def.'s Partial Mot. 1. For the reasons stated above in its discussion of the Motion for Summary Judgment, the Court denies these two claims. Lastly, Lynnhaven asserts that Mercado's wrongful discharge claim in violation of public policy should be limited only to the statute found in Va. Code Ann. § 18.2-345 and that her claims for assault, battery, and intentional infliction of emotional distress should be dismissed. Def.'s Partial Mot. 1-2. However, Mercado has abandoned her claims for assault, battery, and intentional infliction of emotional distress and has limited the wrongful discharge claim to Va. Code Ann. § 18.2-345, so the Court need not address that portion of Lynnhaven's Motion to Dismiss.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, pursuant to

Federal Rule of Civil Procedure 56 is **DENIED** and Defendant's Partial Motion to Dismiss

Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is

**DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
October 21 , 2011

Raymond A. Jackson
**United States District Judge**

25